UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-60197-ALTMAN/Hunt

INVERSIONES YV3343, C.A.,

 *Plaintiff,*

*v.*

LYNX FBO FORT LAUDERDALE, LLC,

 *Defendant.*

_____/

## ORDER

 Inversiones YV3343, C.A. ("Inversiones"), our Plaintiff, has filed a Motion for Summary Judgment ("Pl.'s MSJ") [ECF No. 72]. After careful review, that Motion is **GRANTED in part** as to the Defendant's Eighth Affirmative Defense and **DENIED in part** as to all other requested relief. We'll thus proceed with this case to trial.

## THE FACTS[1]

 On March 15, 2020, Inversiones, a Venezuelan corporation, delivered a Lear Jet Model 55

---

[1] "The facts are described in the light most favorable to [the non-moving party]." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 n.2 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). In considering Inversiones's Motion, then, we describe the facts in the light most favorable to the Defendant and rely on Inversiones's Statement of Material Facts [ECF No. 73] *only* where the Defendant has failed to genuinely dispute a proposition Inversiones has asserted there, *see* S.D. FLA. L.R. 56.1(b) ("All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement provided that the Court finds that the movant's statement is supported by evidence in the record.").

registered as "YV3343" (the "aircraft")—which it operated—to Lynx FBO Fort Lauderdale, LLC ("Lynx") for "maintenance and storage[.]" Plaintiff's Statement of Facts ("Pl.'s SOF") [ECF No. 73] ¶ 5; *see also* Ex. C to Pl.'s SOF at 5 [ECF No. 73-3] ("Mar. 15, 2020, Arrival Manifest") ("Date Submitted: 03/15/2020 . . . Aircraft Registration: YV3343 – (LJ55) . . . Aircraft Operator's Company Name: Inversiones YV3343[.]"). Lynx, our Defendant, is a Fixed Base Operator ("FBO") that provides "general aircraft services such as maintenance, storage, ground and flight instructions" out of the Fort Lauderdale Executive Airport. Pl.'s SOF ¶ 6 n.1 (cleaned up); *see also* Defendant's Response Statement of Facts ("Def.'s Resp. SOF") [ECF No. 77] ¶ 6 (disputing that paragraph only insofar as Inversiones claims that Lynx is required to comply with certain guidelines). While the aircraft was at the FBO, Inversiones made at least one rent payment to Lynx for ramp and parking space. *See* Ex. C to Pl.'s SOF at 2 ("Oct. 2020 Invoice") ("October 2020 Ramp Rent . . . Total Due[:] 1,005.80[.]"); Def.'s Resp. SOF ¶ 5 (disputing that this created "a long-standing relationship" between the parties (citing Oct. 2020 Invoice at 2)).

One day in November 2022, a man calling himself "Cole Watson" showed up at Lynx's "facility and requested access to the aircraft," claiming that "he was [its] new owner." Deposition of Tammy Whitmier ("Whitmier Dep.") [ECF No. 73-9] at 9:20–10:7. Lynx didn't let Watson access the aircraft, though, and instead informed him that he "needed [to provide] proof of ownership before he [could] gain access to the aircraft." *Id.* at 9:23–24. By November 11, 2020, however, Lynx had begun negotiating hangar fees with Watson, *see* Ex. H to Pl.'s SOF at 5 ("Nov. 11, 2020, Rowe Email") [ECF No. 73-8], and it began billing Watson for various maintenance and rental fees soon thereafter, *see* Ex. H to Pl.'s SOF at 2–4 ("Nov. 2020 Invoices to Watson").

On December 1, 2020, Tammy Whitmier, an accounting assistant for Lynx, received an email from Watson, informing her that the aircraft registered as YV-3343 "had been seized by the Venezuelan government and sold to Hector Horquez[,] from whom Mr. Watson had acquired it."

Affidavit of Tammy Whitmier ("Whitmier Aff.") [ECF No. 29-1] ¶ 2; *see also* Ex. A to Whitmier Aff. ("Dec. 1, 2020, Watson Email") [ECF No. 29-1] at 3 ("YV-3343 was serial [number] 013[.] [H]ere is the paper work I have for that one. It was seized by the Venezuelan government and sold to Hector Horquez who we acquired it from."). Watson then provided Lynx "with documents which appeared to evidence . . . [t]he decommission of the aircraft by the Venezuelan government; [t]he ownership of the aircraft by Hector Horquez; and [t]he purchase of the aircraft by . . . Watson Aircraft Salvage Company." Whitmier Aff. ¶ 3 (citing Composite Ex. B to Whitmier Aff. ("Watson Ownership Documents") [ECF No. 29-1] at 5–14)). By this time, Watson had re-registered the aircraft as "N895RS." Pl.'s SOF ¶ 14 (first citing Nov. 2020 Invoices to Watson; and then citing Nov. 11, 2020, Rowe Email); Def.'s Resp. SOF ¶ 4 ("At the time of the subject incident, the FAA registry showed the aircraft registered as N895RS." (citing Ex. A to Def.'s Resp. SOF at 15 ("May 26, 2022, FAA Registry") [ECF No. 77-2] at 15 (listing "Watson Aircraft Salvage Corp" as the "registered owner" of a Lear Jet 55 bearing N-Number 895RS and Serial No. 013))).

After receiving the Ownership Documents from Watson, Whitmier told Lynx's "customer service rep that Cole Watson showed proof of ownership, and he could go to the aircraft." Whitmier Dep. at 6:15–16. But, despite having Inversiones's contact information, *see id.* at 7:14–18 ("Q. . . . Now, as part of your billing practices, you invoiced Inversiones Yankee Victor 3343, you had an email and an account for the rent payments of the aircraft, correct? A. Correct."), Whitmier did not reach out to Inversiones to verify the documents or to confirm the sale of the aircraft, *see id.* at 7:25–8:1 ("Q. But did you call the person who was paying the rent? A. I did not."). Instead, Whitmier "went online to the FAA website and looked at the registry, and [saw] that it was registered to [Watson's] company." *Id.* at 7:23–24; *see also* Def.'s Resp. SOF ¶ 13 ("[T]he FAA registry at the time of the subject incident was itself inconsistent with Plaintiff's ownership of the subject aircraft." (first citing Whitmier Aff. ¶¶ 4–5; then citing Whitmier Dep. at 7:23–24; and then citing May 26, 2022, FAA Registry at 15)). Watson

then "removed [the aircraft] from its storage location[.]" Def.'s Resp. SOF ¶ 15; *see also ibid.* ("The record evidence does not establish that the aircraft was removed from its storage location prior to Defendant's receipt of proof of ownership and instead *establishes the opposite.*" (emphasis added) (citing Whitmier Dep. at 12:12–13:7)).

As it turned out, "those documents were fraudulent," and Cole Watson *wasn't* the legitimate owner of the aircraft. *See* Whitmier Dep. at 10:20–11:1 ("Q. You realize that after Mr. Cole [Watson] took possession of the aircraft by entering your facility with those fraudulent papers, that there was a criminal investigation that revealed those documents were fraudulent? . . . [A.] Yes. I later learned that."). In fact, his real name wasn't even Cole Watson. *See* Ex. B to Pl.'s SOF ("Indictment & Judgment as to Cole Peacock") [ECF No. 73-2] (presenting a grand-jury indictment against "Cole Allan Peacock a/k/a 'Cole Watson'"). It wasn't until February 2021 that Inversiones, "with the assistance of the Fort Lauderdale Police Department and the FAA Office of Inspector General, [ ] was able to recover the remains of its aircraft." Pl.'s SOF ¶ 17 (citing Ex. J to Pl.'s SOF ("Receipt of Recovery") [ECF No. 73-10] at 2); *see also* Def.'s Resp. SOF ¶ 17 ("Undisputed."). "Thereafter, Cole [Watson] was arrested, indicted and sentenced by this Court for his actions in falsifying the documents relevant herein." Pl.'s SOF ¶ 18 (citing Indictment & Judgment as to Cole Peacock (reporting that Watson pled guilty to two counts of making false entries and documents, in violation of 18 U.S.C. § 1519)); Def.'s Resp. SOF ¶ 18 ("Undisputed.").

On January 26, 2021, Inversiones sued Lynx, alleging one count of negligence for "allowing an unknown individual to remove and take possession of the corporate jet." Amended Complaint [ECF No. 5] ¶ 16. Inversiones has since moved for summary judgment on its negligence claim. *See* Pl.'s MSJ at 1 ("Inversiones moves this Court for the entry of an Order granting Summary Judgment in favor of Plaintiff[.]"). We'll consider that Motion here.

## THE LAW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with specific facts showing there is a genuine issue for trial." *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."); *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV.

P. 56 advisory committee's note to 2010 amendment)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

### I.    Summary Judgment on Inversiones's Negligence Claim

Inversiones's Motion for Summary Judgment is confusing (to say the least). Inversiones asks us to "grant summary judgment in its favor and against Defendant on the Complaint and Defendant's Answer and Affirmative Defenses[.]" Pl.'s MSJ at 9 (first citing Complaint [ECF No. 1]; then citing Amnd. Compl.; and then citing Defendant's Answer and Affirmative Defenses ("Def.'s Ans.") [ECF No. 42]). In its view, "[Inversiones] is entitled to summary judgment as Defendant's affirmative defenses are insufficient[.]" *Id.* at 5.

That makes no sense. Although "[p]artial summary judgment may properly be granted on affirmative defenses," *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007) (Whittemore, J.) (citing *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 891 (M.D. Fla. 1996) (Kovachevich, J.)), a plaintiff isn't entitled to summary judgment on *its claim* simply because the defendant fails to plead a proper affirmative defense, *see* FED. R. CIV. P.

56(a) ("A party may move for summary judgment . . . [on a] claim *or* defense[.]" (emphasis added)). Instead, "the movant must show that the record as a whole satisfies each essential element of its case *and* negates any [applicable] affirmative defenses in such a way that no rational trier of fact could find for the non-moving party." *BNSF Rwy. Co. v. Lafarge Sw., Inc.*, 2008 WL 11322894, at *3 (D.N.M. Dec. 8, 2008) (emphasis added) (first citing *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071 (10th Cir. 1998); then citing *Newell v. Oxford Mgmt., Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); and then citing *United Mo. Bank of Kansas City, N.A. v. Gagel*, 815 F. Supp. 387, 391 (D. Kan. 1993)); *see also Electro Med. Assocs. v. Aetna Life Ins. Co.*, 2010 WL 11508047, at *1 (M.D. Fla. May 17, 2010) (Whittemore, J.) ("[W]hen moving for partial summary judgment on Defendants' affirmative defenses[,] [b]ecause Defendants bear the burden of proof on their affirmative defenses, Plaintiff can simply point to the lack of supporting evidence."). In other words, regardless of whether Lynx has a viable *affirmative* defense—*viz.*, one that "admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter," *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1327 (S.D. Fla. Mar. 28, 2011) (King, J.) (cleaned up)—Inversiones still must show "that there is no genuine dispute as to any material fact" and that it's "entitled to judgment as a matter of law" before we can grant its request for summary judgment on its negligence claim, FED. R. CIV. P. 56(a).

Inversiones doesn't do that. To prevail on a negligence claim under Florida law, a plaintiff "must show '(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff.'" *Moreno v. Wal-Mart Stores E., LP*, 2024 WL 1513457, at *3 (S.D. Fla. Apr. 5, 2024) (Altman, J.) (quoting *Wilson–Greene v. City of Miami*, 208 So. 3d 1271, 1274 (Fla. 3d DCA 2017)). Inversiones's Motion *does* include some allegations about these elements:

> 18. Defendant, as an FBO, who was entrusted with Plaintiff's aircraft, owed a duty of care to Plaintiff to guard and secure the aircraft, for Plaintiff's benefit (citing Nov.

2020 Invoices to Watson).

19. Defendant breached it's [sic] duty of care by not only allowing a third-party access to the aircraft, but by assisting the third-party with the removal of the aircraft from Defendant's storage facility, despite Plaintiff having paid Defendant for the storage of the aircraft (first citing Nov. 2020 Invoices to Watson; then citing Nov. 11, 2020, Rowe Email; then citing Dec. 1, 2020, Watson Email; and then citing Whitmier Dep.).

20. Plaintiff's damages are a direct and proximate cause and directly flow from the Defendant's breach of duty to Plaintiff, and Plaintiff has been damaged in an amount of not less than $800,000.00 (citing Ex. A to Pl.'s MSJ ("Def.'s Rule 26 Disclosure") [ECF No. 72-1]).

MSJ at 5–6.[2] What it doesn't do, however, is cite to *any* legal authority for the proposition that these facts "show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (cleaned up); *see also ibid.* ("Plaintiff cannot shift his summary judgment burden to the Court, or require both opposing counsel and this Court to speculate about what it is that plaintiff thinks 'we all know' about the legal merit of his claims."). And Inversiones's "conclusory allegations are insufficient to support summary judgment." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

In fact, except for its brief recitation of our summary-judgment standard, *see* Pl.'s MSJ at 4–5 (first citing FED. R. CIV. P. 56; then citing *Celotex*, 477 U.S. at 325; and then citing *Anderson*, 477 U.S. at 248), the Motion cites "no legal authority supporting *any* of [its] arguments, which 'is grounds itself for rejecting the argument,'" *Alonso Cano v. 245 C&C, LLC*, 2019 WL 11769102, at *9 (S.D. Fla. Nov. 25, 2019) (Lenard, J.) (emphasis added) (quoting *Anderton v. Avery Fin. Servs.*, 2011 WL 4584979, at *5

---

[2] Despite our directive that each cited "material fact must be supported by *pincites* to the relevant parts of record materials"—and our warning that "a general citation to an exhibit without a pincite (*e.g.*, 'Smith Affidavit' or 'Jones Deposition' or 'Exhibit A') is *non-compliant* and will be stricken or disregarded," Scheduling Order [ECF No. 49] at 4—Inversiones's Motion omits pincites in most of its citations, *see generally* Pl.'s MSJ. If that weren't bad enough, several of its exhibits comprise *multiple* documents, *see, e.g.*, Ex. F to Pl.'s MSJ [ECF No. 72-6] (including both the Dec. 1, 2020, Watson Email *and* the Whitmier Dep.); Ex. I to Pl.'s MSJ [ECF No. 72-9] (combining seven different invoices supporting Inversiones's damages calculation into one exhibit), making it difficult for us to discern which specific pieces of evidence Inversiones wants us to consider.

(D. Idaho Aug. 23, 2011)); *see generally* Pl.'s MSJ. Indeed, courts in our District routinely refuse to entertain arguments that ignore our Local Rules by failing to "incorporate a memorandum of law *citing supporting authorities*[.]" S.D. FLA. L.R. 7.1(a)(1) (emphasis added); *see, e.g.*, *Brown v. NCL (Bah.) Ltd.*, 2016 WL 8716482, at *5 (S.D. Fla. Oct. 13, 2016) (Lenard, J.) (denying summary judgment where the plaintiff simply "restates the facts and, without citation to legal authority, suggests that the facts entitle her to summary judgment" (cleaned up)); *Belony v. Amtrust Bank*, 2011 WL 2297669, at *2 (S.D. Fla. June 8, 2011) (Marra, J.) ("Defendant's failure to cite *any* authority for this principle makes it difficult for the Court to rule in its favor . . . [and] is itself a basis to deny its motion."); *see also NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). By failing to identify any legal authority to support its negligence claim, Inversiones provides us with no way of understanding the legal relevance of its proffered evidence. *See Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) ("An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." (cleaned up)). On this ground alone, the Plaintiff's Motion for Summary Judgment on its negligence claim is **DENIED**.

In any event, it's clear to us that Lynx genuinely disputes the factual assertions underpinning each of the elements of Inversiones's negligence claim. We'll start with duty. Citing only to one "invoice for monthly storage" Lynx sent Inversiones, the Plaintiff claims that "Defendant, as an FBO, who was entrusted with Plaintiff's aircraft, owed a duty of care to Plaintiff to guard and secure the aircraft, for Plaintiff's benefit." Pl.'s MSJ at 5 (citing Oct. 2020 Invoice). Lynx counters that it had no duty to *Inversiones* "regarding safekeeping of the subject aircraft," Defendant's Response to the Plaintiff's Motion for Summary Judgment ("Def.'s MSJ Resp.") [ECF No. 78] at 5, by noting that the "record evidence provided by Plaintiff indicates that on March 15, 2020 the aircraft owner was Deivyd Jose Garcia Gomez," not Inversiones. Def.'s Resp. SOF ¶ 5 (citing Mar. 15, 2020, Arrival Manifest);

*see also* Mar. 15, 2020, Arrival Manifest at 5 (listing Gomez as the "owner" of the aircraft and Inversiones as its "operator"). And Inversiones never explains why Lynx owed a legal duty to it (Inversiones)—rather than to Gomez. *See Nat'l Title Ins. Co. v. Lakeshore 1 Condo. Ass'n, Inc.*, 691 So. 2d 1104, 1107 (Fla. 3d DCA 1997) ("[N]egligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right." (quoting *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 99 (N.Y. 1928))). Because the Motion fails to explain why Lynx owed a duty to Inversiones specifically, Inversiones hasn't shown that it's entitled to judgment as a matter of law on this "threshold legal question[.]" *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783–84 (Fla. 1st DCA 2003) ("The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie." (first citing *McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla. 1992); and then citing *Menendez v. Palms W. Condo. Ass'n*, 736 So. 2d 58 (Fla. 1st DCA 1999))). Again, this deficiency (standing alone) would be enough for us to **DENY** Inversiones's Motion on its negligence claim.

Even if all that weren't true, Inversiones's Motion would *still* fail on the element of breach. Inversiones claims that Lynx "assist[ed] the third-party [Watson] with the removal of the aircraft from Defendant's storage facility," MSJ at 9 (first citing Nov. 2020 Invoices to Watson; then citing Nov. 11, 2020, Rowe Email; then citing Dec. 1, 2020, Watson Email; and then citing Whitmier Dep.), and that "it was not until December 1, 2020, *after* the aircraft was removed from it's [sic] storage location at Lynx, that Watson provided Lynx with the fraudulent documentation purporting to show ownership of the subject aircraft, *id.* at 3 (cleaned up) (first citing Dec. 1, 2020, Watson Email; and then citing Whitmier Dep. at 10:20–11:1). But, drawing all reasonable inferences in the light most favorable to Lynx—as we must at this stage of the litigation, *see Allen*, 121 F.3d at 646 ("[T]he court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." (cleaned up))—Lynx has shown "that there is a genuine issue for trial" as to whether that was the case, FED. R. CIV. P. 56.

As Lynx correctly notes, the "record evidence cited regarding the allegation that Watson was given access to the subject aircraft in November are invoices pertaining to the storage of the subject aircraft and an email from Thomas Rowe to Watson regarding a quote for hangar space." Def.'s MSJ Resp. at 6 (first citing Pl.'s SOF ¶ 14; then citing Nov. 2020 Invoices to Watson; and then citing Nov. 11, 2020, Rowe Email). These documents simply show that Lynx had *offered* Watson hangar space, *see* Nov. 11, 2020, Rowe Email at 5 ("Lynx FBO Network is pleased to offer community hangar space for Lear 55 at $2719.75/month + 12.5% tax. . . . Please feel free to contact me if you would like to review our current hangar space agreements."), and that "the subject aircraft was merely fueled, stored, and maintained" at that time, Def.'s MSJ Resp. at 6; *see also* Nov. 2020 Invoices to Watson at 2–4 (billing Watson for "fuel" and "GPU/APU Services"). Because these communications are "subject to multiple interpretations, a genuine issue of material fact remains," rendering summary judgment inappropriate here. *66th Street Props., LLC v. Transp. Ins. Co.*, 2010 WL 11607302, at *4 (S.D. Ga. Mar. 30, 2010).

And Inversiones's suggestion that Lynx received the ownership documentation from Watson "after the aircraft was removed from its storage location," Pl.'s SOF ¶ 15 (emphasis omitted), is also contradicted by Lynx's record evidence. In her deposition, Tammy Whitmier (Lynx's employee) testified that she told Watson he "needed proof of ownership *before* he [could] gain access to the aircraft," Whitmier Dep. at 9:23–24 (emphasis added), and that she gave Watson access only *after* he emailed her the (fraudulent) ownership documents, *see id.* at 6:13–16 ("Q. Once you received this email, what exactly did you do? A. I told the customer service rep that Cole Watson showed proof of ownership, and he could go to the aircraft."). Because Lynx has "come forward with 'specific facts showing that there is a genuine issue for trial,'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)), we cannot grant Inversiones summary judgment on this issue either, *see Chicollo v. Command Sec. Co.*, 2015 WL 12531981, at *1 (S.D. Fla. Oct. 13, 2015)

(Rosenberg, J.) ("[U]pon discovering a genuine dispute of material fact, the Court must deny summary judgment." (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007))).

Inversiones is *also* wrong to insist that "Plaintiff's damages in the amount of $800,000.00 is undisputed by Defendant pursuant to Defendant's computation of damages as stated in Exhibit 'A.'" Pl.'s MSJ at 4 (citing Def.'s Rule 26 Disclosure).[3] That Exhibit reproduces Lynx's Supplemental Initial Rule 26 Disclosure, which "adopts the computation of damages put forth by the Plaintiff in its Initial Disclosure *for purposes of this Supplemental Initial Disclosure*." Def.'s Rule 26 Disclosure at 2 (emphasis added). In adopting Inversiones's computation, however, Lynx wasn't *agreeing* that Inversiones was owed that amount of money. It was simply saying, in the context of its "Third-Party Complaint against Watson Aircraft Salvage Corporation," that it wanted Watson to reimburse it (Lynx) "for damages in the amount of any judgment entered against it and in favor of Plaintiff[.]" *Ibid.*; *see also* Third-Party Complaint [ECF No. 43] ¶¶ 21–22 ("*If* Inversiones is correct that Lynx enabled removal of the Subject Aircraft then Lynx merely acted in reliance upon the correctness of the misrepresentations, resulting in damages to Lynx currently believed to be in the amount of $800,000.00. By reason of the foregoing, Watson is liable in the amount of any judgment that Inversiones obtains against Lynx in this action." (emphasis added) (cleaned up)).

Although "the general rule [is] that a party is bound by the admissions in his pleadings," *Nichols v. Barwick*, 792 F.2d 1520, 1523 (11th Cir. 1986), that rule does not apply when a party takes "inconsistent positions . . . in pleadings in a complicated joinder situation, involving . . . the contingent

---

[3] As to *causation*, Inversiones merely offers the conclusory assertion that the "Plaintiff's damages are a direct and proximate cause and directly flow from the Defendant's breach of duty to Plaintiff[.]" Pl.'s MSJ at 6. But, since "conclusory allegations are insufficient to support summary judgment," *Avirgan*, 932 F.2d at 1577, Inversiones hasn't shown that it's entitled to judgment as a matter of law on this issue either, *see, e.g.*, *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

liability of third parties," *Continental Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971); *see also Nichols*, 792 F.2d at 1523 ("An exception has been carved out of this general rule to permit the exercise of the liberal pleading and joinder provisions of the Federal Rules of Civil Procedure lest inconsistent pleadings under Rule 8(e)(2) be used as admissions negating each other and lest the allegations in third party complaints and cross-claims seeking recovery over in the event of liability in the principal action be used as admissions establishing liability." (cleaned up)). Since a reasonable jury could find that Lynx merely adopted Inversiones's damages calculation "in order to lay a basis for establishing the contingent liability" of Watson *in the event* Lynx was found liable, *Nichols*, 792 F.2d at 1523; *see also* Def.'s Rule 26 Disclosure at 2–3 ("Defendant also adopts the computation of damages set forth by Plaintiff in its Initial Disclosure in support of its contention of damages [against Watson] in the amount of not less than $800,000.00."), we disagree that Lynx ever acceded to Inversiones's damages computation, *see Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Plus, Lynx offers credible evidence to rebut the claim in Inversiones's Affidavit of Loss, *see* Ex. K to Pl.'s SOF at 2–3 ("Affidavit of Loss") [ECF No. 73-11], that the "Plaintiff has been damage[d] by Defendant due to lack of possession of the aircraft, as well as loss of usage, and actual damages to the aircraft, in an amount exceeding $800,000.00," *id.* ¶ 7; *see also Great Am. Ins. Co. v. Mueller*, 2021 WL 1720284, at *3 (M.D. Fla. Apr. 30, 2021) (Barber, J.) ("The affidavit and invoices constitute prima facie evidence that these expenses were reasonable. As such, the burden shifts to Defendant to demonstrate that the costs and expenses are unreasonable." (citing *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, at *2 (S.D. Fla. Dec. 1, 2009) (Cohn, J.))).[4]

---

[4] Lynx insinuates that we shouldn't credit Inversiones's "self-serving" Affidavit of Loss as evidence of damages. Def.'s MSJ Resp. at 7 (cleaned up). But "there's nothing wrong with a party relying, at

For instance, Lynx highlights that the "Plaintiff attaches an invoice for repairs which is dated March 19, 2020, almost eight months prior to the subject incident and which is not addressed to Plaintiff[.]" Def.'s Resp. SOF ¶ 19 (citing Ex. K to Pl.'s SOF at 6–20 ("Third-Party Invoices") [ECF No. 73-11] at 6); *see also* Third-Party Invoices at 6 (dated "03/09/2020" and addressed to "Constructora Pedeca C/O Alphamegajets"). Lynx also points out that the Plaintiff's damages calculation is partially based off "duplicative invoices for regular hangar and storage fees . . . that were not addressed to Plaintiff," Def.'s Resp. SOF ¶ 19 (citing Third-Party Invoices at 12–13); *see* Third-Party Invoices at 12 (billing "JVH Global Inc" $12,000 for "hangar space [from] January to April" (cleaned up)); *id.* at 13 (same), and "an invoice addressed to Jet Master Aviation Shop, a non-party entity, for a battery[,] [which] is dated November 14, 2022, over a year and a half *after* the Plaintiff recovered the subject aircraft from Watson," Def.'s MSJ Resp. at 8 (citing Third-Party Invoices at 14); *see also* Third-Party Invoices at 14 (dated "11/14/2022"). And (Lynx adds) the other invoices underlying the Plaintiff's damages calculation are just bills for "regular safety inspections[,] checks[,] . . . [and] replacement[s]" that do not reflect "damages flowing from the subject incident." Def.'s MSJ Resp. at 9 (citing Third-Party Invoices at 18–20); *see also, e.g.*, Third-Party Invoices at 18 (estimating a bill of $9,760 in labor and $1,500 in parts for the aircraft's "600 hour/24 month inspection/checks"); *id.* at 19 (estimating a bill of $1,080 in labor and $27,000 in parts for the aircraft's "12 year/6,000 landing replacement of the cabin and emergency exit exterior door handles").

When viewing this evidence in the light most favorable to Lynx, a reasonable jury *could* find that (at least some of) the invoices underlying Inversiones's damages calculation reflect *either* (1) repairs

---

summary judgment, on the self-serving statements of its employees." *Inskeep v. Baccus Global, LLC*, 2024 WL 416357, at *6 (S.D. Fla. Feb. 5, 2024) (Altman, J.); *see also ibid.* ("To hold that testimony under oath by an interested party cannot be substantial evidence of a fact in that party's favor would undermine much of the law on summary judgment." (citing *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005))).

that have nothing to do with Lynx's alleged misconduct in this case, *see* Def.'s MSJ Resp. at 9 ("Plaintiff is asserting that the cost for what are regular safety inspections and checks are somehow damages flowing from the subject incident."), *or* (2) fees that weren't charged to Inversiones at all, *see id.* at 7 ("[T]he March 19, 2020 invoice was addressed to Constructura Pedeca c/o Alphamegajets, who are not parties to this action. Plaintiff also submits an invoice addressed to JVH Global, who is also not a party to this action[.]" (first citing Third-Party Invoices at 6; and then citing *id.* at 10–11)). Because "genuine disputes of material fact for jury resolution exist regarding the scope of the damage to the [aircraft], and the cost to repair those damages," *Guidry-Davis v. State Farm Fire & Cas. Co.*, 2024 WL 231842, at *13 (S.D. Ala. Jan. 22, 2024), we'll let the jury resolve these questions at trial.

\* \* \*

We may only grant summary judgment on a claim when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Inversiones fails on both prongs. On its contention that Lynx was negligent as a matter of law, Inversiones's "'skeletal argument' won't do." *Michaels v. Sasser's Glass Works Inc.*, 662 F. Supp. 3d 1223, 1244 (S.D. Fla. 2023) (Altman, J.) (quoting *United States v. Esformes*, 60 F.4th 621, 635 (11th Cir. 2023)). And, even if Inversiones *had* supported its Motion with legal arguments—it didn't—we'd still deny its request for summary judgment because "genuine issue[s] of material fact exist[ ] as to the . . . element[s]" of negligence. *Lanza v. Schriefer*, 2010 WL 2754327, at *3 (S.D. Fla. July 12, 2010) (Seitz, J.). We therefore **DENY** Inversiones's request for summary judgment on its negligence claim.

## II.    Partial Summary Judgment as to Lynx's Affirmative Defenses

The rest of Inversiones's Motion argues for "summary judgment in [the Plaintiff's] favor and against Defendant on . . . Defendant's Answer and Affirmative Defenses[.]" Pl.'s MSJ at 9 (cleaned up); *see also id.* at 6–9 (addressing each of Lynx's nine affirmative defenses). Because Rule 56 allows a party to "move for summary judgment . . . [on] each claim *or defense*," FED. R. CIV. P. 56(a) (emphasis

added), "[p]artial summary judgment may properly be granted on affirmative defenses," *Tingley Sys.*, 509 F. Supp. 2d at 1218 (cleaned up).

Once a plaintiff meets its "initial burden of identifying the evidence which it believes shows the absence of a genuine issue of material fact," *Int'l Ship Repair*, 944 F. Supp. at 891 (citing *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991)), the defendant "must rely on or submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment," *Meth Lab Cleanup, LLC v. Spaulding Decon LLC*, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015) (Moody, J.) (cleaned up). Because the defendant bears the burden of proving its affirmative defenses at trial, a plaintiff "may support its motion for summary judgement" *either* "with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial" *or* by "show[ing]— that is, point[ing] out to the district court—that there is an absence of evidence to support the non-moving party's case." *Four Parcels*, 941 F.2d at 1437–38 (citing *Celotex*, 477 U.S. at 324). If the plaintiff doesn't meet its initial burden, then "the nonmoving party is not required to make this showing and the motion for summary judgment will be denied." *Int'l Ship Repair*, 944 F. Supp. at 891 (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991)).

A federal district court also has the authority, "on its own," to *strike* any affirmative defenses that are "insufficient [as a matter of law,] . . . redundant, immaterial, impertinent, or scandalous[.]" FED. R. CIV. P. 12(f). While there's little substantive difference between striking an affirmative defense and entering summary judgment against it, *see Int'l Ship Repair*, 944 F. Supp. at 891 ("The effect [of granting partial summary judgment] being that if the moving party sustains its burden, then the affirmative defenses will be struck by the Court."), our *sua sponte* review of an affirmative defense must be decided "on the pleadings alone, and should not be granted unless the relevant insufficiency is 'clearly apparent,'" *Stewart v. Keystone Real Estate Grp., LP*, 2015 WL 1471320, at *5 (M.D. Pa. 2015)

16

(quoting *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5 FEDERAL PRACTICE & PROCEDURE § 1380 (3d ed., Feb. 2024) ("Matter[s] outside the pleadings normally [are] not considered on a Rule 12(f) motion[.]").

Inversiones's careless briefing precludes us from entering summary judgment on most of Lynx's affirmative defenses. *See Int'l Ship Repair*, 944 F. Supp. at 891 ("[I]f the moving party does not satisfy its initial burden, the nonmoving party is not required to [offer rebuttal evidence] and the motion for summary judgment will be denied." (citing *Clark*, 929 F.2d at 604)). But we also needn't proceed to trial with "unsupported claims or defenses which, as a matter of law, do not raise issues of material fact[.]" *Outsource Servs. Mgmt., LLC v. Lake Austin Props. I, Ltd.*, 2012 WL 12898892, at *16 (M.D. Fla. June 11, 2012) (Scriven, J.). To avoid that, we'll exercise our discretion to strike (or modify) any of Lynx's affirmative defenses that are "patently frivolous[ ] or . . . clearly invalid as a matter of law." *Losada v. Norwegian (Bah.) Ltd.*, 296 F.R.D. 688, 690 (S.D. Fla. 2013) (King, J.) (cleaned up); *see also Wyne v. Carnival Corp.*, 2022 WL 6127876, at *2 (S.D. Fla. Oct. 7, 2022) (Scola, J.) (where an "affirmative defense functions, at worst, as a denial of the Plaintiff's claims . . . the appropriate remedy is not to strike th[at] . . . affirmative defense, but to treat it as a specific denial" (cleaned up)). We'll therefore address each affirmative defense in turn.

Lynx's *First Affirmative Defense* "states that the subject aircraft was removed from the premises as a result of the fraud of a third party where the third party made a false statement of material fact with the knowledge that it was false, that the third party intended for the statement to induce Defendant to act, that Defendant reasonably relied upon the truth of the statement, and Plaintiff has alleged damages have occurred as a result of reliance upon the truth of the statement." Def.'s Ans. at 4. Characterizing this affirmative defense as "insufficient," Inversiones avers that "[s]uch reliance is misplaced as the documentation provided was clearly fraudulent on its face . . . [and] the record reflects that Defendant granted access to the third-party BEFORE receiving and relying on the fraudulent

documentation." Pl.'s MSJ at 6 (first citing Oct. 2020 Invoice; and then citing Nov. 2020 Invoices to Watson).

Inversiones (still citing no law) falls far short of showing that it's entitled to summary judgment on this affirmative defense. As we've said, *see ante*, at 10–12, there remains an outstanding dispute as to whether Lynx gave Watson access to the aircraft *before* Watson presented Lynx with the ownership documents, *see* Def.'s Resp. SOF ¶ 15 ("Disputed. The record evidence does not establish that the aircraft was removed from its storage location prior to Defendant's receipt of proof of ownership and instead establishes the opposite." (citing Whitmier Dep. at 12:12–13:7)); *see also* Whitmier Dep. at 6:13–16 ("Q. Once you received this email, what exactly did you do? A. I told the customer service rep that Cole Watson showed proof of ownership, and he could go to the aircraft."). And whether Watson's ownership documents were "fraudulent on their face," Pl.'s MSJ at 6, is a factual question that must be resolved by the jury, *see Seyler v. Wash. Mut. Bank, FA*, 2009 WL 4730554, at *3 (M.D. Fla. Dec. 4, 2009) (Steele, J.) (denying summary judgment where there remained "a question of material fact as to exactly when [the plaintiff] found out about the purportedly forged note and mortgage and whether she should have acted more diligently in investigating the mortgage documents")—especially since Lynx has offered *other* evidence corroborating its reliance on Watson's false representations, *see* Def.'s Resp. SOF ¶ 13 ("[T]he FAA registry at the time of the subject incident was itself inconsistent with Plaintiff's ownership of the subject aircraft." (first citing Whitmier Aff. at 2; then citing Whitmier Dep. at 10:23–24; and then citing May 26, 2022, FAA Registry)). Inversiones has failed to show—as a matter of law or fact—that Lynx *cannot* "maintain th[is] defense[ ] by a preponderance of the evidence" at trial. *Tingley Sys.*, 509 F. Supp. 2d at 1218. We'll therefore **DENY** the Plaintiff's Motion as to Lynx's First Affirmative Defense.

Lynx's *Second Affirmative Defense*—that "there was no contractual relationship or agreement between the Plaintiff and the Defendant," Def.'s Ans. at 4, *isn't* an affirmative defense at all. An

*affirmative* defense "raises matters extraneous to the plaintiff's *prima facie* case," *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1348 (11th Cir. 1988) (quoting *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986)), by asserting "new allegations of excuse, justification or other . . . matter[s]" negating liability. *Pujals*, 777 F. Supp. at 1327. But "defenses [that] negate an element of the plaintiff's *prima facie* case . . . are excluded from the definition of affirmative defense" in FED. R. CIV. P. 8(c). *In re Rawson Food*, 846 F.2d at 1348 (quoting *Ford*, 795 F.2d at 546). Lynx says that it's advancing this defense to establish that "[a] genuine issue exists as to whether Defendant owed [a] *duty* to Plaintiff regarding safekeeping of the subject aircraft." Def.'s MSJ Resp. at 5 (emphasis added). But, since duty is an element of negligence, *see, e.g.*, *Jenkins*, 851 So. 2d at 783 ("[I]f no legal duty exists, then no action for negligence may lie." (cleaned up)), Lynx has essentially conceded that this *isn't* an affirmative defense.

At the same time, Inversiones doesn't meet its "initial burden of identifying the evidence which it believes shows the absence of a genuine issue of material fact" on the issue of contract formation. *Int'l Ship Repair*, 944 F. Supp. at 891 (citing *Four Parcels*, 941 F.2d at 1438). Nor does it ever even "point[ ] out . . . that there is an absence of evidence to support" this affirmative defense. *Four Parcels*, 941 F.2d at 1438 (quoting *Celotex*, 477 U.S. at 323). Instead, Inversiones vaguely directs us to FAA airport compliance regulations from 1989, the Fort Lauderdale Executive Airport Rules and Regulations, and the Transportation Security Administration Security Guidelines for General Aviation Airport Operators and Uses. *See* Pl.'s MSJ at 6–7 (first citing FED. AVIATION ADMIN, AIRPORT COMPLIANCE REQUIREMENTS (1989) ("1989 FAA Compliance Regulations") [ECF No. 72-2]; then citing CITY OF FORT LAUDERDALE, FORT LAUDERDALE EXECUTIVE AIRPORT RULES AND REGULATIONS ("FXE Rules") [ECF No. 72-3]; and then citing TRANSP. SEC. ADMIN., A-001, SECURITY GUIDELINES FOR GENERAL AVIATION AIRPORT OPERATORS AND USERS (2017) [ECF No. 73-7]). But Inversiones never explains—and, of course, it provides no legal authority for any of this—why those regulations indicate

"the absence of a genuine [dispute]" on the issue of contract formation. *Clark*, 929 F.2d at 608 (quoting *Celotex*, 477 U.S. at 323). In situations like this—when "Plaintiffs cannot show that there is no material dispute with respect to [ ] issues, which largely go to the merits of their claims . . . on which Plaintiffs bear the burden of proof at trial," *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 723 (E.D. Mo. 2015)—the proper course is for us "to treat [the improper affirmative defense] as a specific denial," *Wyne*, 2022 WL 6127876, at *2, deny "partial summary judgment on [the] purported affirmative defense[ ], and allow the parties to argue th[is] issue[ ] at trial," *Perrin*, 114 F. Supp. 3d at 723 (citing *Smith v. N. Star Charter Sch., Inc.*, 2011 WL 3205280, at *2 (D. Idaho July 26, 2011)). So, we'll **DENY** this part of the Plaintiff's Motion and treat Lynx's Second Affirmative Defense as a specific denial.

Lynx's *Third Affirmative Defense*, which "specifically claims any credit or set-off to which it may be entitled [ ] for any and all payments paid or payable to the Plaintiff for any damages alleged in the Amended Complaint from any collateral source whatsoever," Def.'s Ans. at 5, *is* a proper affirmative defense, *see Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) ("[W]e conclude that the collateral source payments argument falls within the scope of Rule 8(c), and that the [defendant] erred in not including this issue in the pleadings as an affirmative defense."). Here, it's Inversiones that confuses "defenses" with "affirmative defenses," arguing that, because the "Defendant only claims for any credit or setoff from Plaintiff's recovery of damages 'from any collateral source whatsoever[,]' . . . [and] Defendant does not deny that Plaintiff is entitled to damages, Plaintiff is entitled to summary judgment on its claim[.]" Pl.'s MSJ at 7 (quoting Def.'s Ans. at 4).

Every clause of that sentence is wrong. *First*, Lynx doesn't "*only* claim[ ] . . . credit or setoff from Plaintiff's recovery of damages 'from any collateral source whatsoever.'" Pl.'s MSJ at 7 (emphasis added) (quoting Def.'s Ans at 4). It also seeks "all setoffs and limitations of liability pursuant to the doctrine of comparative fault." Ans. at 5. Nor *could* Lynx properly plead (as an affirmative defense) that Inversiones *isn't* entitled to damages, since that defense would be "directly related to its liability[.]"

*Hassan*, 842 F.2d at 263. *Second*, Lynx does, in fact, deny that Inversiones is entitled to damages. *Compare* Amnd. Compl. ¶ 17 ("As a direct and proximate cause of Defendant's actions, Plaintiff has lost possession of the corporate jet and therefore has been damaged."), *with* Def.'s Ans. ¶ 17 ("Defendant denies the allegations contained within Paragraph 17 and demands strict proof thereof."), *and* Def.'s Resp. SOF ¶ 16 ("Disputed. Plaintiff cites no record evidence of Watson's alleged damages to aircraft."). *Third*, even if Inversiones had advanced a legally coherent argument, that wouldn't mean it "is entitled to summary judgment on its *claim*." Pl.'s MSJ at 7 (emphasis added). At most, it would mean that Inversiones *might* be entitled to summary judgment as to this affirmative defense. Since Inversiones doesn't advance any legally viable arguments, however, we **DENY** its request for partial summary judgment on Lynx's Third Affirmative Defense.

As to Lynx's *Fourth*, *Fifth*, and *Sixth Affirmative Defenses*, *see* Ans. at 4–5, Lynx correctly notes that the "Plaintiff fails to cite any record evidence in support of its allegation that these affirmative defenses cannot be maintained," Def.'s MSJ Resp. at 10; *see also* Pl.'s MSJ at 7–8 (failing to cite any record evidence). Nor does Inversiones try to "show[ ] . . . that there is an absence of evidence to support" these affirmative defenses. *Four Parcels*, 941 F.2d at 1438 (quoting *Celotex*, 477 U.S. at 323); *see also* Pl.'s MSJ at 7–8 (failing to make any arguments to this effect). Because Inversiones hasn't satisfied its "initial burden of identifying the evidence which it believes shows the absence of a genuine issue of material fact," *Int'l Ship Repair*, 944 F. Supp. at 891 (citing *Four Parcels*, 941 F.2d at 1438), we cannot grant the Plaintiff summary judgment on these affirmative defenses.

Still, part of Lynx's *Fourth Affirmative Defense*—that the Plaintiff was "guilty of negligence and [that] its negligence was the *sole, proximate cause* or contributing cause of the damages complained of and the recovery, if any, should be barred or reduced proportionately pursuant to the doctrine of comparative negligence," Ans. at 5 (emphasis added)—is improperly pled. To the extent Lynx "is denying that it proximately caused the Plaintiff's injury, then this isn't a proper affirmative defense

because 'proximate cause' . . . is an essential element of a cause of action for negligence.'" *Bynum v. Carnival Corp.*, 2024 WL 229545, at *5 (S.D. Fla. Jan. 22, 2024) (Altman, J.) (quoting *Jones v. Royal Caribbean Cruises, Ltd.*, 2013 WL 12061858, at *2 (S.D. Fla. Mar. 14, 2013) (Torres, Mag. J.)). We'll therefore treat Lynx's allegation that Inversiones's negligence "was the sole, proximate cause" of any damages as a specific denial. On the other hand, "to the extent [Lynx] is asserting that, by virtue of the Plaintiff's own negligence, he was comparatively at fault, then this is a proper affirmative defense because '[c]omparative negligence *is* a valid affirmative defense.'" *Ibid.* (quoting *Rioux v. Carnival Corp.*, 2023 WL 8111846, at *5 (S.D. Fla. Nov. 22, 2023) (Bloom, J.)).

Similarly, Lynx's *Fifth Affirmative Defense* alleges "that if there was any negligence that caused or contributed to the Plaintiff's damages, it was solely the result of negligence on the part of the third parties who were not under the care, custody, control or supervision of Defendant and therefore, the Plaintiff cannot recover against Defendant." Def.'s Ans. at 5. This "third-party, proximate-cause defense 'simply attacks certain allegations in the complaint by denying them—namely, that the defendant was the proximate cause of plaintiffs' injuries. . . . [It] is not an attempt to allocate liability . . . but instead an attempt to evade any liability by denying that the defendant was the proximate cause.'" *Bynum*, 2024 WL 229545, at *5 (cleaned up) (quoting *Snyder v. Royal Caribbean Cruises, Ltd.*, 2020 WL 13401895, at *2–3 (S.D. Fla. Nov. 11, 2020) (Moore, J.)); *see also Reed v. Dollar Gen. Corp.*, 2005 WL 2062231, at *1 (S.D. Fla. Aug. 23, 2005) (Bucklew, J.) ("When a defendant in a negligence action alleges that a plaintiff's injury resulted from someone else's negligence rather than his own, the defendant is simply elaborating on the simplest defense of them all, namely that plaintiff has sued the wrong person." (quoting *King ex rel. Murray v. Rojas*, 767 So. 2d 510, 512 n.1 (Fla. 4th DCA 2000))). Once again, therefore, we'll take this allegation (which attacks Lynx's proof of causation) as a specific denial.

Lynx's *Seventh Affirmative Defense* also improperly combines two issues. In pleading this affirmative defense, Lynx says only this:

> Plaintiff has unclean hands and is therefore barred from recovering damages against Defendant. Plaintiff has alleged damages for which it is unable to provide substantial, competent evidence of same to the court.

Def.'s Ans. at 5. Although "unclean hands" *can* be an affirmative defense, *see, e.g.*, *Nat'l Christmas Prods., Inc. v. OJ Comm., LLC*, 2022 WL 18464911, at *2 (S.D. Fla. Nov. 21, 2022) (Dimitrouleas, J.) (declining to "strike [ ] Defendant's unclean hands defense"), Lynx's unclean-hands defense is, for two reasons, insufficient as a matter of law.

*One*, Lynx's pleading fails to adequately give Inversiones "fair notice" of the grounds on which it rests. *See Progressive Express Ins. Co. v. Star Painting & Waterproofing, Inc.*, 333 F.R.D. 600, 602 (S.D. Fla. 2009) (Dimitrouleas, J.) ("[An affirmative defense must] give the opposing party fair notice of the [defense] and its grounds." (cleaned up)). To properly plead the defense of unclean hands, a defendant must "demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted." *Royal Palm Props., LLC v. Premier Estate Props., Inc.*, 2010 WL 3941745 (S.D. Fla. Oct. 6, 2021) (Cohn, J.). Lynx doesn't do that: It, in fact, never tells us *why* or *how* Inversiones's hands are "unclean." *See* Def.'s Ans. at 5 (providing no basis for this affirmative defense). Where, as here, an affirmative defense is "totally devoid of any allegations that would put Plaintiff on notice of the factual basis for [the] legal defenses asserted," *United Fixtures Co. v. Base Mfg.*, 2008 WL 4550212, at *5 (M.D. Fla. June 23, 2008) (Kelly, Mag. J.), *report and recommendation adopted*, 2008 WL 4550212 (M.D. Fla. Oct. 8, 2008) (Antoon, J.), the plaintiff shouldn't be forced to "speculate" about that factual basis, *Daley v. Scott*, 2016 WL 3517697, at *4 (M.D. Fla. June 28, 2016) (Steele, J.); *see also id.* at *4 n.8 ("If district courts in this Circuit are required to strike shotgun affirmative defenses because they are too unspecific, it is counterintuitive to permit boilerplate affirmative defenses to survive." (first citing *Paylor v. Hartford Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014); and then citing *Paleteria La Michoacana v. Productos Lacteos*, 905 F. Supp. 2d 189, 192 (D.D.C. 2012))).

*Two*, even if Lynx *had* outlined the factual basis for this affirmative defense, the defense would remain insufficient as a matter of law, since unclean hands is an "equitable doctrine" that "traditionally applies only to claims for equitable relief." *Regions Bank v. Old Jupiter, LLC*, 2010 WL 5148467, at *6 (S.D. Fla. Dec. 13, 2010) (Hurley, J.) (first citing *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 865 n.26 (5th Cir. 1979); and then citing *Scheiber v. Dolby Lab'ys, Inc.*, 293 F.3d 1014, 1022 (7th Cir. 2002)), *aff'd* 449 F. App'x 818 (11th Cir. 2011). In our case, Inversiones seeks only money damages, *see* Amnd. Compl. ¶ 18 (requesting relief of "an amount of not less than $800,000.00"), so "the unclean hands doctrine is not applicable," *Regions Bank*, 2010 WL 5148467, at *6 (citing *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 756 n.10 (3d Cir. 1990)). Because Lynx's unclean-hands defense—however pled—will *always* be a legally insufficient defense to Inversiones's negligence claim, we now **STRIKE** the first sentence of Lynx's Seventh Affirmative Defense.

The second sentence of the Seventh Affirmative Defense—that Inversiones "is unable to provide substantial, competent evidence" of its damages, Ans. at 5—isn't a proper affirmative defense, *see NR Grp. 3 Contractors, Inc. v. Grp. 3 Contractors, LLC*, 2017 WL 7792718, at *4 (S.D. Fla. Sept. 26, 2017) (Torres, Mag. J.) ("[A]llegations that a plaintiff's damages are speculative do not constitute affirmative defenses because those statements are merely allegations that Plaintiff has not met its burden of proof." (first citing *Taylor v. Chase*, 2016 WL 6575072, at *3 (N.D. Ind. Nov. 7, 2016); then citing *Varrasso v. Barksdale*, 2016 WL 1375594, at *2 (S.D. Cal. Apr. 5, 2016); and then citing *Joe Hand Promotions, Inc. v. Kurti*, 2015 WL 5276691, at *1 (C.D. Cal. Sept. 8, 2015))). We'll therefore treat this sentence as a specific denial.

But we won't grant Inversiones summary judgment on this issue. In arguing that no factual issues remain on the question of damages, Inversiones once again contends that Lynx has acceded to the Plaintiff's damages calculation. *See* Pl.'s MSJ at 8 ("Defendant has stated it 'adopts the computation of damages set forth by Plaintiff in its Initial Disclosure' for calculation of any actual, consequential,

and incidental damages as well as any additional computations put forth by Plaintiff in support of its contention of damages in the amount of not less than $800,000.00." (first quoting Def.'s Rule 26 Disclosure; and then citing Affidavit of Loss)). We've already rejected this argument, finding that Lynx didn't adopt Inversiones's damages calculation at all. *See ante*, at 12–15; *see also* Def.'s Resp. SOF ¶ 19 ("Regarding the damages being undisputed, Defendant limited such adoption for purposes of the Initial Disclosures and reserved the right to amend and supplement when the discovery process has been completed." (citing Def.'s Rule 26 Disclosure)). For those same reasons, then, we (again) **DENY** summary judgment on this issue.

Lynx's *Eighth Affirmative Defense* claims that Inversiones "has failed to join a necessary party to this action." Def.'s Ans. at 5. In its Motion, Inversiones appears to be making two arguments as to why this "affirmative defense fails." Pl.'s MSJ at 8. *One*, Inversiones says that the "Defendant, as a fixed-base operator, whose operations include 'ancillary aircraft ground support' such as 'hangar storage facilities, ramp parking and tie-down facilities,' where Defendant was entrusted with the storage of Plaintiff's aircraft, and but for Defendant's negligence, Plaintiff's damages would not have occurred." *Ibid.* (quoting FXE Rules). We're not sure what that means or how the features of Lynx's FBO have anything to do with the issue of joinder. But we're certain that Inversiones never tells us. *Two*, Inversiones avers that "it is Defendant who seeks indemnification from the third-party for its actions." Pl.'s MSJ at 8. That's true. *See, e.g.*, Third-Party Compl. ¶ 22 ("Watson is liable in the amount of any judgment that Inversiones obtains against Lynx in this action."). But—absent further explanation by Inversiones—we (again) have no idea why that matters.

Curiously, Lynx never responds to the Plaintiff's Motion on this issue. *See generally* Def.'s MSJ Resp. So, while *we* may be skeptical of Inversiones's arguments here, Lynx has "conceded the validity of [the Plaintiff's] arguments by failing to respond." *Pinchasov v. Robinhood Fin. LLC*, 2021 WL 4991238, at *2 (S.D. Fla. Sept. 10, 2021) (Altonaga, J.) (quoting *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th

Cir. 2010)). When a party doesn't respond to an argument *at all*, we (as participants in an adversarial system) generally treat the issue as forfeited. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue[.]"); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *see also Tursom v. United States*, 2021 WL 1647888, at *2 n.2 (S.D. Fla. Apr. 27, 2021) (Bloom, J.) ("The premise of our adversarial system is that . . . courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983))). Because Lynx offers *no* argument in support of this affirmative defense, we'll **GRANT** Inversiones partial summary on Lynx's Eight Affirmative Defense.

Finally, in its *Ninth Affirmative Defense*, Lynx contends that Inversiones "has failed to state a claim for negligence and is barred from recovering damages for same." Def.'s Ans. at 6. Whether a plaintiff has stated a claim goes to the very heart of the plaintiff's *prima facie* case. *See, e.g.*, *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1185 (M.D. Fla. 2022) (Scriven, J.) ("To state a claim for negligence, a plaintiff 'must allege four elements: a duty, breach of that duty, causation, and damages.'" (quoting *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012))). As such, "[f]ailure to state a claim is not an affirmative defense," *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1194 (S.D. Fla. 2022) (Bloom, J.) (citing *Affiliati Network, Inc. v. Wanamaker*, 2019 WL 7376766, at *8 (S.D. Fla. Nov. 25, 2019) (Cooke, J.), *aff'd* 847 F. App'x 583 (11th Cir. 2021)), and should instead be viewed

as a specific denial, *see, e.g.*, *In re Rawson Food*, 846 F.2d at 1348–49 (11th Cir. 1988) (treating affirmative defense based on failure to state a claim as a specific denial). We'll do that here.

* * *

Accordingly, we hereby **ORDER and ADJUGE** as follows:

1. The Plaintiff's Motion for Summary Judgment [ECF No. 72] is **GRANTED in part** and **DENIED in part**:

    a. The Motion for Summary Judgment is **DENIED** as to Count I of the Plaintiff's Amended Complaint.

    b. The Motion for Summary Judgment is **GRANTED** as to the Defendant's *Eighth* Affirmative Defense.

    c. The Motion for Summary Judgment is **DENIED** as to the Defendant's *First*, *Third*, and *Sixth* Affirmative Defenses.

    d. The Motion for Summary Judgment is **DENIED** as to the Defendant's *Second*, *Fifth*, and *Ninth* Affirmative Defenses, but we'll treat these defenses as specific denials.

    e. The Motion for Summary Judgment is **DENIED** as to the Defendant's *Fourth* Affirmative Defense, but we'll treat the Defendant's allegation that the Plaintiff "was the sole, proximate cause" of its damages as a specific denial.

    f. The Motion for Summary Judgment is **DENIED** as to the Defendant's *Seventh* Affirmative Defense, but we'll treat the second sentence of this defense as a specific denial.

2. The Defendant's *Ninth* Affirmative Defense and the first sentence of the Defendant's *Seventh* Affirmative Defense are **STRICKEN with prejudice**.

3. A Status Conference is **SET** for **June 14, 2024**, at **2:00 p.m.** in the Miami Division, Courtroom 12-4, before Judge Roy K. Altman.

4.  The Clerk is directed to **REOPEN** this case.

**DONE AND ORDERED** in the Southern District of Florida on June 10, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record